## Yeich's Appeal.

A will which devised a farm to the testator's two sons "at $60 per acre," the son W. to have the buildings and support his mother, "this to commence only when W. arrives at the age of twenty-one," construed, in connection with the facts, and to ascertain testator's probable intent; and *held*, that an auditor's report which had charged the other son with the rental value during W.'s minority mistook the intention and was erroneous.

(Decided October 5, 1885.)

Appeal from the decree of the Orphans' Court of Schuylkill County, upon an auditor's report of distribution. Reversed.

The appeal was taken by Franklin Yeich. The only questions were upon the construction of the will of his father, John Yeich, and what was probably the intent of certain provisions which are stated in the opinion of the court.

*W. F. Shepherd* for appellant.

*F. W. Bechtel* for appellees.

OPINION BY MR. JUSTICE GORDON:

A careful examination of the will of John Yeich, deceased, leads us to conclude that a mistake was made in the court below, by surcharging the appellant with the rental value of the farm devised to Franklin and Washington Yeich, from the time of the testator's death until Washington arrived at the age of twenty-one. The learned auditor was of the opinion that the

testator had in view an equal distribution of his property among all his children. In this we agree with him, but, as we think, in working out this proposition he has made the distribution seriously unequal by putting a burthen upon Franklin which his father never intended he should bear.

Agreeing, then, that equality of distribution among his children was John Yeich's intention, we must determine how best that intention can be worked out from the language and provisions of the will. He provides, first, for the payment of his debts and funeral expenses, and then for the support of his wife, by directing that she shall have certain household furniture; the right to the use of the house; that she shall be furnished with certain provisions, specially mentioned, annually; one cow with its necessary feed; and that each of the children shall pay her $10 yearly. He then proceeds as follows: "I give to my son Franklin Yeich, and to my son Washington Yeich, the place where I now live at $60 per acre; they shall divide the place but Washington shall have the land where the buildings are on, but Washington has to keep my wife, and give her the meat, wheat, apples and cider, and everything as above stated, and a room in the house, yearly and every year during her life; this shall commence only when Washington arrives at the age of twenty-one years, and then it is my will that when Washington has arrived at the age of twenty-one years, then each of my children shall pay to my wife the sum of $10 yearly, and every year during her life."

Now, it will be observed that Washington is a minor, according to the evidence, of the age of sixteen, and that no provision is so far made for the support of the widow and family during Washington's nonage. How this necessary provision was to be made, we will discover in the subsequent part of the will.

Leaving this matter for the present, we proceed to ascertain how the children were provided for and how the testator endeavored to equalize their several devises. As we have seen, Washington and Franklin were to take the homestead farm at $60 per acre; Solomon was to have the place on which he was then living, at $40 an acre; John, the farm on which he was residing at $60 per acre; and the place in Manheim township, then in the possession of his daughter Caroline, intermarried with Augustus Brensinger, he directs to be divided between Anthony and Caroline, imposing upon the one part, embracing

the buildings, $31, and upon the other, $29 an acre. This was
evidently a present estimation and equalization of the several
devises, and it also secured to the estate an ample fund for the
payment of all debts and legacies in case of a deficiency of
personal assets. We have here a final disposition of these sev-
eral farms, and to say that Franklin and Washington were, by
way of equalization, to have their land further burthened by the
payment of rent, is a clear perversion of the testator's intent.
But, in the meantime, until the youngest child came of age,
provision must be made for the maintenance of the widow and
family.

Hence comes that item of the will which has given rise to all
the controversy, and yet the meaning of it seems to us very
clear. The three boys were to work the homestead farm, dur-
ing the nonage of the youngest, for the support of the family
which the testator left upon it, and the surplus, if any, after
payment of debts and expenses incident to the working of the
place, was to go to the widow. The words used are "debts and
expenses," and as the one necessarily applies to those expen-
ditures which cannot but arise from the conduct of the business,
so must the other, for they are immediately connected and form
but one sentence. It may be esteemed ingenious to disconnect
these words as the auditor has done, and while the one is al-
lowed to be connected with the farming business, the other ap-
plied to the debts of the estate, but it is not sound. "My wife
shall have the proceeds;" of what? Certainly, of the farm;
"if," that is *when*, "the debts and expenses are paid." The con-
nection of the several parts of the sentence thus becomes ob-
vious enough, as does the meaning of the testator, and neither
ought to have been misunderstood. Besides this, there was no
surplus; there was nothing left beyond the necessary expenses
of the farm and family.

The auditor does not pretend to doubt either the veracity or
integrity of the appellant, and he testifies that what he got from
the farm was put back upon it in order to increase its pro-
ductiveness. But the auditor thinks he ought to have farmed
it as he found it, and thus saved something for the estate. The
answer to this is, in the language of the witness, "The place
was in a poor condition when father died. The first year we
made just as much as we needed to run the farm." It follows
that had that system been pursued throughout, there would have

been nothing realized for either estate or widow. Again; the auditor seems to have forgotten that from the alleged rental the expenses of the family were to be deducted, and that if Franklin was entitled to no wages, he ought at least, to have been allowed something for his maintenance. We are, therefore, satisfied that the surcharge of $1,250, together with its interest, $375, was improperly made and must be stricken from the account.

The decree of the court below is reversed and set aside at the costs of the appellees, and it is ordered that the account of the appellant be amended as above stated, and that a decree be entered awarding him the sum of $1,665 in addition to the amount conditionally found in his favor by the auditor.